Michael E. Quiat, Esq.
Atty ID No. 015911985
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax    201-342-1810
*Attorneys for Plaintiff, Terri Nespole*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRI NESPOLE,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST UNUM LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. _____<br><br>ECF CASE<br><br>COMPLAINT |

Plaintiff, TERRI NESPOLE, by way of Complaint against the Defendant, FIRST UNUM LIFE INSURANCE COMPANY (hereinafter "Unum" or "Defendant'), alleges as follows:

1. Plaintiff is a resident of the State of New Jersey, County of Somerset, with a principal residence in Bedminster, New Jersey.

2. Defendant, Unum, is a disability insurance carrier licensed to do business in the State of New Jersey with a principal place of business in the State of New York.

3. Jurisdiction and venue are proper in this Court pursuant to 29 USC § 1001 *et seq.* and 28 USC § 1331 *et seq.* and 28 USC § 1391 *et seq.*

## ESSENTIAL FACTS

4. Plaintiff, Terri Nespole (hereinafter referred to as "Ms. Nespole" or "Plaintiff"), is a 52-year-old woman who lives in Bedminster, New Jersey. Ms. Nespole was employed by New York Life Investments (hereinafter "New York Life") from 2006 through 2017 in various positions, last working as a Director of Digital Marketing, Branding and Advertising in New York Life's Jersey City, NJ office. While employed by New York Life, Plaintiff was a beneficiary under New York Life's Long Term Disability plan underwritten by First Unum Life Insurance Company ("Unum") through Policy No. 573603 (hereinafter referred to as the "Policy" and attached hereto as **Exhibit A**).

5. As a Director of Digital Marketing, Branding and Advertising, Ms. Nespole was responsible for maintaining a consistent look and feel across all the company brands while also managing day-to-day creative decision making, and managing all large scale branding and advertising initiatives. All new design projects were conceptualized and designed under Ms. Nespole's management and creative direction. Needless to say, this position was fast-paced, highly stressful and demanded long hours of sustained focus and concentration.

6. On February 13, 2013, Ms. Nespole slipped and fell on the steps outside her home in Bedminster, New Jersey. X-rays taken at the time revealed that Ms. Nespole suffered multiple fractures in her thoracic spine. She was prescribed a back brace for approximately seven weeks along with several medications to help relieve her pain, muscle spasms and inflammation, including hydrocodone, diazepam and ibuprofen.

7. In March 2013, Ms. Nespole was evaluated by pain management physician Dr. Alexander Levin, who put her on a steady course of pain injection treatments under anesthesia, as she was still experiencing excruciating pain throughout her neck and back following the fall.

2

8. Following the recommendations of her doctors, Ms. Nespole also underwent extensive physical therapy at Kessler Rehabilitation from March 2013 through November 2013.

9. Notwithstanding her diligent efforts to recover, she continued to suffer severe pain and fatigue.

10. In October 2013, Ms. Nespole was evaluated by Gregory S. Rihacek, MD, a Board Certified rheumatologist. After taking an extensive history and conducting a thorough clinical evaluation, Dr. Rihacek diagnosed Terri with fibromyalgia, which he believed originated from the trauma she sustained from her injuries at the time of her fall on February 13, 2013. Dr. Rihacek then began Ms. Nespole on a regular course of Gralise, a medication used to treat fibromyalgia symptoms.

11. Dr. Rihacek advised Terri to begin working from home one day per week, an accommodation which New York Life allowed.

12. Throughout 2014, Ms. Nespole's condition continued to deteriorate as she experienced chronic and worsening pain and fatigue. She became more and more challenged by her professional responsibilities at New York Life and was struggling both physically and mentally from the impact that fibromyalgia was having on her life.

13. On March 29, 2015, Ms. Nespole was rear ended in a motor vehicle accident while stopped at a red light. She was evaluated by Orthopedist Dr. Cook who advised that her increased pain symptoms were due to her fibromyalgia being aggravated by the trauma and injuries she sustained in the accident. Despite the worsening pain and fatigue, Ms. Nespole continued to work in the career she loved at New York Life throughout 2015 and 2016.

14. By the beginning of 2017, Ms. Nespole was living with daily chronic fatigue and pain in most muscle groups. Maintaining her job responsibilities was harder and harder even

with accommodations from New York Life. When she was not working, she spent most of her time in bed resting and trying to recover.

## PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

15. On May 12, 2017, Ms. Nespole presented to Dr. Rihacek with complaints of extreme fatigue and severely debilitating pain all over her body, which had now become intolerable. She was unable to get out of bed and go to work. She was also experiencing incontinence and having severe bladder and abdominal distress. On that date, Dr. Rihacek advised Ms. Nespole to cease work as she was no longer physically or mentally capable of performing her occupation as Director of Digital Marketing, Branding and Advertising at New York Life.

16. Terri's last day of work at New York Life was May 15, 2017. With the support and encouragement of Dr. Rihacek, she reluctantly filed for disability.

17. Under the terms of the Unum Policy:

"You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." (**Exhibit A**)

18. Unum contacted New York Life to inquire as to whether Ms. Nespole's job performance had suffered in the months prior to her disability. New York Life informed Unum that Ms. Nespole's work performance had been declining for the past few years. Furthermore,

4

New York Life informed Unum that Ms. Nespole seemed mentally "foggy" all the time and could no longer keep up with the pace of the work the way she had been able to do in the past. New York Life attributed Ms. Nespole's decreasing work performance to the health issues she was experiencing.

19. Under the short term disability plan at New York Life, Ms. Nespole was approved based upon her fibromyalgia diagnosis and related comorbid orthopedic, urological and behavioral health conditions.

20. On February 6, 2018, Unum advised Ms. Nespole that her claim for long term disability benefits was denied as Unum had determined that Ms. Nespole had the functional capacity to work in her own occupation as Director of Digital Marketing, Branding and Advertising at New York Life.

21. Ms. Nespole timely submitted an administrative appeal to Unum dated August 3, 2018, in which she documented in great detail how the symptoms of her fibromyalgia, including widespread chronic pain and debilitating fatigue, restricted and limited her from working in her own occupation.

22. Ms. Nespole's appeal also included further documentation from Dr. Rihacek, as well as her orthopedist, Dr. Weber-Lopez, and her urologist, Dr. Youngren, among other treatment providers. These providers submitted significant additional documentation in support of Ms. Nespole's disability from her own occupation as a result of the debilitating symptoms she experienced from fibromyalgia.

23. As a result of her precipitous physical decline and the impact that decline had on her personal and professional life, Ms. Nespole also experienced increased depression and

anxiety. She obtained treatment for these conditions from Kathryn Davies, M. Ed., L.C.S.W., who has confirmed that these conditions are secondary to her medical condition of fibromyalgia.

24. On October 29, 2018, Unum rejected Ms. Nespole's appeal and affirmed its decision to terminate her benefits effective October 28, 2017.

25. A review of the claim file reveals that Unum never had Ms. Nespole's claim reviewed by a rheumatologist, even though fibromyalgia, the condition which disables her, is a rheumatological disorder. Furthermore, Unum never exercised its right to have Ms. Nespole examined in an Independent Medical Examination by any medical expert, at any time prior to denying her claim and upholding its decision to deny the claim following appeal.

26. A review of the claim file reflects that Unum completely ignored all medical evidence in favor of Ms. Nespole's disability claim and engaged in a biased and self-serving review which inevitably resulted in the denial of Ms. Nespole's benefits.

27. Ms. Nespole has now exhausted her administrative remedies.

28. Unum's asserted basis for denial of benefits was arbitrary and capricious and not based on substantial evidence. Unum's reviewers disregarded both the overwhelming objective medical evidence in support of Ms. Nespole's disabling fibromyalgia symptoms, as well as Ms. Nespole's own subjective complaints that she suffers from debilitating fatigue and severe chronic pain.

29. The disabling symptoms of Ms. Nespole's fibromyalgia have not improved since the onset of her disability in 2017, and in fact, they have significantly worsened. Ms. Nespole's fibromyalgia symptoms continue to disable her.

30. In addition, as a direct consequence of her failing physical health, Ms. Nespole also suffered increasing symptoms of debilitating anxiety and depression. These symptoms also

exacerbated Ms. Nespole's disabling fibromyalgia, rendering her unable to perform her own occupation or any other gainful occupation. Ms. Nespole's treating providers continue to support total disability as a result of her fibromyalgia symptoms. Plaintiff is totally disabled under the terms of the Policy.

## AS AND FOR A FIRST CAUSE OF ACTION

31. Plaintiff repeats and re-alleges each and every allegation set forth above in Paragraphs 1 through 30 as if fully set forth at length herein.

32. Plaintiff is disabled within the meaning of the terms of the Policy, and as such is entitled to disability benefits thereunder.

33. Defendant's decision on February 6, 2018 denying Plaintiff's LTD benefits was arbitrary and capricious and not based on substantial evidence. Plaintiff was deprived of a full and fair review when her administrative appeal was denied by Unum on October 29, 2018.

34. Moreover, Defendant is acting under a clear conflict of interest within the meaning of *Metropolitan Life Insurance Company v. Glenn*, 128 S. 2343 (2008), which conflict has poisoned its decision-making in this case, to Plaintiff's great prejudice.

35. By virtue of the foregoing, the Defendant has breached the terms of the Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 USC § 1132 (a)(1)(B), § 502(a)(1)(B) and applicable regulations thereunder.

## AS AND FOR A SECOND CAUSE OF ACTION
### (In The Alternative)

36. Plaintiff repeats and re-alleges each and every allegation set forth above in Paragraphs 1 through 35 as if fully set forth again herein.

7

37. By virtue of its behavior, Defendant has breached its fiduciary duty owed to Plaintiff under § 502(a)(3), 29 USC § 1132(a)(3), placing Defendant's own interests over that of Plaintiff.

38. Among the fiduciary duties breached by Defendant are (i) failing to honestly evaluate Plaintiff's claim before denial of benefits; (ii) failing to honestly consider the evidence which supported Plaintiff's claim; (iii) disregarding the opinions of Plaintiff's treating providers; (iv) failing to conduct an Independent Medical Examination; and (v) failing to consult with a rheumatologist even though Plaintiff's major disabling condition is fibromyalgia which is a rheumatological disorder; and (vi) engaging in highly partisan, adversarial process with Plaintiff, not designed to provide Plaintiff with the benefits to which she was entitled, but rather to thwart her right to same regardless of the consequences to the Plaintiff.

39. By virtue of the Defendant's breach of fiduciary duty, Plaintiff has incurred losses and harm, separate, apart, and in addition to her right to benefits as alleged in the First Cause of Action. Accordingly, Plaintiff is entitled to equitable relief in a form to be determined by the court upon a full consideration of the facts.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(a) Declaring Plaintiff disabled within the meaning of the Defendant's Policy as set forth in **Exhibit A** of the Complaint;

(b) Ordering the Defendant to pay Plaintiff disability benefits retroactive to October 28, 2017, the date of wrongful denial, and to continue paying the Plaintiff's benefits for Long Term Disability under the terms of the Policy as alleged in the First Cause of Action;

(c) Ordering appropriate equitable relief to Plaintiff, in accordance with the Second Cause of Action, as this Court may deem appropriate.

(d) Awarding to Plaintiff her costs of suit, including reasonable attorney's fees; and

8

(e)   Granting such further relief as this Court may deem just and proper.

>USCHER QUIAT, USCHER & RUSSO
>A Professional Corporation
>433 Hackensack Avenue, 2nd Floor
>Hackensack, NJ 07601
>Phone 201-342-7100
>Fax    201-342-1810

Dated: March 19, 2019         By:   /s/Michael E. Quiat
                                    MICHAEL E. QUIAT
                                    Atty ID No. 015911985
                                    *Attorney for Plaintiff, Terri Nespole*

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

>USCHER QUIAT, USCHER & RUSSO
>A Professional Corporation
>433 Hackensack Avenue, 2nd Floor
>Hackensack, NJ 07601
>Phone  201-342-7100
>Fax    201-342-1810

Dated: March 19, 2019      By:   /s/Michael E. Quiat
                                 MICHAEL E. QUIAT
                                 Atty ID No. 015911985
                                 ***Attorney for Plaintiff, Terri Nespole***

G:\Disability\Nespole, Terri\Litigation\Complaint - Unum.docx